# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DAVE MUSTO,** *et al.*,

    **Plaintiffs,**

                                    **Case No. 2:17-cv-506**
                                    **Judge James L. Graham**
      v.                          **Chief Magistrate Judge Elizabeth P. Deavers**

**PAULA ZARO,**

    **Defendant.**

## REPORT AND RECOMMENDATION

This case arises from a dispute involving issues relating to the ownership and/or seizure of a pure-bread male Cane Corso dog named Pepone and the consequent damages that may have arisen from the failure to handle, show, and breed Pepone. Upon referral by the assigned District Judge pursuant to 28 U.S.C. § 636(b) (ECF No. 73), this matter is before the undersigned for a Report and Recommendation on the damages to be awarded to Plaintiffs against Defendant Paula Zaro. For the reasons that follow, it is **RECOMMENDED** that the Court enter default judgment against Defendant in the amount of $168,074.12.

## I.

This Court has previously detailed the lengthy procedural history in this case (ECF Nos. 52, 72), which is incorporated by reference. Briefly, Plaintiffs originally filed their Verified Complaint in the Delaware Court of Common Pleas, asserting claims for breach of contract, unjust enrichment/quantum meruit, specific performance, intentional infliction of emotional distress, fraudulent inducement, promissory estoppel, injunctive relief, declaratory judgment, defamation, violation of Ohio Deceptive Trade Practices Act, false light, and tortious

interference with business relationships. (ECF No. 2.) Defendant removed the action to this Court on June 12, 2017. (*Id*.; ECF Nos. 1.) Defendant's answer to the Complaint was due on January 24, 2019. (ECF No. 60.) When Defendant, who has been proceeding without the assistance of counsel since August 28, 2018 (ECF No. 44), failed to file an answer, Plaintiffs applied for entry of default (ECF No. 68), which the Clerk entered on January 30, 2019. (ECF No. 69.) Thereafter, Plaintiffs moved for default judgment (ECF No. 70), which the Court granted on March 18, 2019. (ECF No. 73.) The Court referred this matter to the undersigned to conduct a hearing on damages. (*Id.*) The undersigned thereafter set a hearing for May 2, 2019, and directed that the Clerk send a copy of the Order setting the hearing and a copy of the District Judge's Order granting default judgment (ECF No. 73) to Defendant by certified and regular mail (ECF No. 75), notwithstanding the fact that the Court previously granted her request to participate in electronic case filing (ECF No. 65).

The undersigned conducted an evidentiary hearing on May 2, 2019, and briefly reconvened the hearing on May 3, 2019, for the limited purpose of admitting Plaintiffs' exhibits into evidence. Plaintiffs and their counsel appeared at the hearings. Although she had notice of the hearing (ECF Nos. 75, 77, 78), Defendant did not appear or otherwise submit evidence. At the hearings, Plaintiffs offered the testimony of Plaintiff Dave Musto as well as exhibits, which were accepted into evidence and discussed in more detail below.

## II.

"'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also* Fed. R. Civ. P. 55(b)(2) (permitting the Court to conduct a hearing to, *inter alia*, determine the amount of damages); *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 455, 2011 WL 4000849, at *2 (6th Cir. 2011) ("'Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.'") (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiffs bear the burden of proving compensatory damages to a reasonable degree of certainty by a preponderance of the evidence. *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 563 (6th Cir. 2011) (citations omitted). "Under Ohio law, punitive damages are recoverable in a tort action when compensatory damages have already been awarded and 'the actions or omissions of th[e] defendant demonstrate malice or aggravated or egregious fraud.'" *In re E. I. Du Pont De Nemours and CompanyC-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2015 WL 4943968, at *2 (S.D. Ohio Aug. 19, 2015) (quoting Ohio Rev. Code § 2315.21(C)). Plaintiffs must prove by clear and convincing evidence that they are entitled to recover punitive damages. *Id.*; Ohio Rev. Code § 2315.21(D)(4).

### III.

At the hearing on May 2, 2019, Plaintiffs asked the Court to award damages in the amount of $296,462.62. (Plaintiffs' Exhibit 3 (breaking down request into categories of damages).) The Court addresses each category in turn.

**A.     Out of Pocket Damages**

Plaintiffs ask the Court to award $8,388.50 in out of pocket costs attributable to their damages related to their claims for breach of contract and fraudulent inducement. (Plaintiffs'

3

Exhibit 3.)  Plaintiffs itemize these damages as follows:

| | | |
|---|---|---|
| 1. | February and March 2017 Entry Fees: | $667.00 |
| 2. | Infodog Online Entry Fees: | $103.50 |
| 3. | Handling Monthly Fees (February and March 2017): | $4,000.00 |
| 4. | DN Magazine Ad: | $675.00 |
| 5. | Dogs in Review Ad: | $610.00 |
| 6. | Mark Advertising (Ad Design Fees): | $576.00 |
| 7. | Photo shoot: | $250.00 |
| 8. | Mileage to Shows (ATL, Tallahassee, L'ville)*: <br> *(2,817 miles @ $0.535 per mile) | $1,507.00 |
| | TOTAL: | $8,388.50 |

(*Id.*)

In support of this request, Plaintiffs submitted copies of invoices related to most of the expenses.  (Plaintiffs' Exhibit 4.)  Plaintiff Dave Musto also testified as to the reasons for these expenses, explaining that campaigning and showing a dog like Pepone, among other things, significantly increases the value of the dog when it is ready to be studded and when selling puppies.

The undersigned finds all of this evidence sufficient to support Plaintiffs' request for out of pocket damages.  *See* Fed. R. Civ. P. 55(b)(2); *Eggert*, 428 F. App'x at 563.  It is therefore **RECOMMENDED** that the Court award to Plaintiffs $8,388.50 in out of pocket costs attributable to their damages related to their claims for breach of contract and fraudulent inducement.

**B. Damages from Loss of Breeding Rights**

Plaintiffs ask the Court to award $120,000.00 attributable to their damages from loss of

breeding rights related to their claims for breach of contract and fraudulent inducement.

(Plaintiffs' Exhibit 3.) Plaintiffs itemize these damages as follows:

1. 6 puppies per litter x $2,000 = $12,000 x 4 litters = $48,000.00

2. 2 males kept from 4 litters x $2,400 average stud fee x 10 breedings (5 each) = $24,000.00

3. 2 females from the 4 litters producing 6 puppies per litter (12 total puppies per litter) x $2,000 = $24,000 x 2 litters = $48,000.00

4. TOTAL DAMAGES: $120,000.00

(*Id.*)

In support of this request, Plaintiff Dave Musto testified that he had four breeding rights of Pepone to any female he owned or co-owned. He explained that approximating six puppies per litter is a conservative estimate as there are generally six to nine puppies per litter and some females have as many as fourteen puppies in a litter. Having the breeding rights is important to keep moving forward with Plaintiffs' business, which is their livelihood that includes a breeding program in addition to training and showing dogs. Plaintiff Dave Musto, who has been breeding Cane Corsos since 2011, further testified that the above calculation is fair, noting, among other things, that Plaintiffs have on one occasion purchased a single dog for $30,000.00. He also went on to explain if he had bred Pepone, he would have collected and stored the semen as he has with other dogs in the past but was not seeking reimbursement of those expenses and he would have assumed the cost for such collection and storage.

The undersigned finds the uncontroverted testimony of Plaintiff Dave Musto, a breeder with multiple years of experience in the industry, sufficient to support Plaintiffs' request for damages from loss of breeding rights. *See* Fed. R. Civ. P. 55(b)(2); *Eggert*, 428 F. App'x at 563. It is therefore **RECOMMENDED** that the Court award to Plaintiffs $120,000.00 in damages

from loss of breeding rights related to their claims for breach of contract and fraudulent inducement.

**C.     Damages from Defamation / False Light / Ohio Deceptive Trade Practices Act / Tortious Interference**

Plaintiffs next request $10,000.00 in damages related to their claims of defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference. (Plaintiffs' Exhibit 3.) As previously noted, Plaintiff Dave Musto testified that showing and breeding dogs is their profession and livelihood. Plaintiffs are constantly in the public eye at shows and on social media. To maximize a dog's success and financial value, Plaintiffs campaign with their dogs, bringing judges' attention to the animals prior to shows. At the shows, the judges and other attendees, including potential clients, see how Plaintiffs interact with the dogs and what care they give the dogs.

Plaintiff Dave Musto described the dog show in Louisville, Kentucky in March 2017 as one of the biggest shows lasting four days ("the Louisville show"), with handlers flying in from around the country and from outside the United States. When Plaintiffs could not find Pepone mid-way through the Louisville show, Plaintiff Kathy Caton-Musto made an announcement regarding the missing dog and the building went into lockdown ("the incident"). Handlers from everywhere looked for Pepone and Plaintiff Dave Musto described the incident as his worst nightmare to have Pepone missing in this public setting.

Two hours after Pepone went missing, Defendant texted him to say she had Pepone. Plaintiff Dave Musto testified that the Cane Corso and dog show communities are small and people quickly found out that Defendant took Pepone away from Plaintiffs at the Louisville show. Plaintiff Dave Musto testified that some people, including clients, conclude that this must have happened because Plaintiffs must not have taken care of Pepone. The Affidavit of Dave

6

Musto (ECF No. 9-1 and presented at the hearing on May 2, 2019) further avers that after the Louisville show, they learned that Defendant made multiple disparaging statements about Plaintiffs mistreating Pepe while he was in their possession. (ECF No. 9-1 at ¶¶ 35–36.) Plaintiff Dave Musto also testified that such assertions and the disappearance of Pepone at the Louisville show hurt Plaintiffs' reputation and cost them clients. He further testified that they still have people approach them and say that they heard what happened and that Plaintiffs must not have taken care of Pepone for Defendant to take him away from Plaintiffs.

Prior to the incident, Plaintiff Dave Musto testified that Plaintiffs enjoyed an impeccable reputation in the community. He stated that Defendant's assertions that they mistreated Pepone were false, explaining that Pepone would not have continued to win points and rounds if he were in poor condition, pointing to a win photo of Pepone taken in Georgia that Defendant later advertised. (Plaintiffs' Exhibit 5.) Plaintiff Dave Musto specifically testified that Pepone had won events in the first two or three days during the Louisville show. To further demonstrate that they took good care of the dog, he pointed to a letter from a veterinarian with over thirty years of experience who attended the Louisville show, observed Pepone, and stated that the dog was in excellent condition at the time of the incident. (Plaintiffs' Exhibit 6.) Notably, he testified that Defendant continued to show Pepone after she took the dog from Plaintiffs at the Louisville show.

The undersigned finds the uncontroverted testimony of Plaintiff Dave Musto and exhibits sufficiently support Plaintiffs' request for damages related to their claims of defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference. *See* Fed. R. Civ. P. 55(b)(2); *Eggert*, 428 F. App'x at 563; *Yellow Book USA, Inc. v. Brandeberry*, No. 3:10–CV–025, 2011 WL 3240558, at *2 (S.D. Ohio July 28, 2011) ("[I]n cases of defamation per se, the

law presumes the existence of damages. . . . Ohio Jury Instructions on damages for defamation per se provide that the jury is to decide the amount of money that is reasonable and fair for Brandeberry's injuries directly caused by the alleged defamation.") (citing, *inter alia*, O.J.I. CV 431.07(2)); *Sayavich v. Creatore*, No. 07–MA 217, 2009 WL 3165555, at *5 (Ohio Ct. App. Sept. 29, 2009) ("'[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'") (quoting *Gilbert v. WNIR 100 FM*, 142 Ohio App. 3d 725, 745 (Ohio Ct. App. 2001)). It is therefore **RECOMMENDED** that the Court award to Plaintiffs $10,000.00 in damages related to their claims of defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference.

**D.    Punitive Damages**

Plaintiffs also request $138,388.50 in punitive damages. (Plaintiffs' Exhibit 3.) Plaintiff Dave Musto explained that this requested amount represents the total of their out of pocket damages ($8,388.50) plus damages from loss of breeding rights ($120,000.00) plus damages related to their claims of defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference ($10,000.00).

Ohio law permits the recovery of punitive damages for certain common law torts, including defamation. *Connor Group v. Raney*, No. 3:14-cv-283, 2015 WL 13651287, at *5 (S.D. Ohio Feb. 24, 2015). "Punitive damages may be awarded on a finding of actual malice." *Whitt Sturtevant, LLP v. NC Plaza LLC*, No. 14AP–919, 43 N.E.3d 19, 41 (Ohio Ct. App. Sept. 29, 2015). "Actual malice is defined as '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights

and safety of other persons that has a great probability of causing substantial harm.'" *Id.* (quoting *Preston v. Murty*, 32 Ohio St.3d 334 (Ohio 1987)). "The purpose of punitive damages is twofold—to punish the tortfeasor and to deter similar conduct." *Whetstone v. Binner*, 146 Ohio St.3d 395, 397 (Ohio 2016). A plaintiff has the burden of proving by clear and convincing evidence that he or she is entitled to an award of punitive damages. *Id.* at 398; *In re E. I. Du Pont De Nemours and CompanyC-8 Pers. Injury Litig.*, 2015 WL 4943968, at *2; Ohio Rev. Code § 2315.21(D)(4); *Cabe v. Lunich*, 70 Ohio St.3d 598, 601 (Ohio 1994). However, "an award of punitive damages is not automatic. Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact." *Whetstone*, 146 Ohio St.3d at 398; *see also McGee v. Foshee*, No. 2008–CA–69, 2009 WL 580740, at *2 (Ohio Ct. App. Mar. 6, 2009) ("A trial court has discretion to determine the amount of punitive damages[.]").

Here, the record contains clear and convincing evidence to support Plaintiffs' entitlement to punitive damages. As set forth in more detail above, Plaintiff Dave Musto's uncontroverted testimony establishes that Defendant took Pepone from Plaintiffs with no prior notice or explanation during the middle of the Louisville show, a large, well-attended show within the professional community. Defendant's actions lead others in the professional community, including potential clients, to conclude that she took Pepone away because Plaintiffs did not take care of the dog. Moreover, Defendant later communicated to third parties that Plaintiffs failed to take proper care of Pepone. However, the uncontroverted facts, including that Plaintiffs had successfully passed numerous inspections undertaken by, *inter alios*, the American Kennel Club, that Pepone had successfully shown and won events, that an experienced veterinarian saw Pepone at the Louisville show and stated that the dog was in excellent condition, and that

9

Defendant continued to show Pepone after taking him from Plaintiffs, belie Defendant's assertions. This evidence establishes that Defendant, at the least, consciously disregarded the truth to the detriment of Plaintiffs' reputation in the professional community. *See Whitt Sturtevant, LLP*, 43 N.E.3d at 41. Considering the record as a whole, the undersigned therefore finds that the Court's discretion is best exercised in award punitive damages in the amount of $50,000.00, *i.e.*, five times the amount of the recommended damages related to Plaintiffs' claim of defamation, which will serve the purpose of punishing Defendant and deterring similar conduct. *See Whitt Sturtevant, LLP*, 43 N.E.3d at 41; *Whetstone*, 146 Ohio St.3d at 397; *McGee*, 2009 WL 580740, at *2; *see also See* Fed. R. Civ. P. 55(b)(2); *Eggert*, 428 F. App'x at 563. Accordingly, it is **RECOMMENDED** that the Court award punitive damages to Plaintiffs in the amount of $50,000.00.

**E.     Attorney's Fees and Costs**

Finally, Plaintiffs seek recovery of their attorney's fees and costs in the amount of $19,685.62. (Plaintiffs' Exhibits 3 and 7.) In light of the evidence and awards recommended above, the undersigned finds that an award of such fees and costs is appropriate. Having reviewed counsel's invoices for securing a favorable outcome for Plaintiffs (*see* Exhibit 7), the undersigned further finds that these fees and costs are reasonable and necessary. It is therefore **RECOMMENDED** that the Court award to Plaintiffs $19,685.62 in attorney's fees and costs.

**III.**

For the foregoing reasons, it is **RECOMMENDED** that default judgment in the total amount of **$168,074.12** be entered against Defendant Paula Zaro based on the following breakdown:

| | |
|---|---|
| Out of Pocket Costs | $8,388.50 |
| Breeding Rights Damages | $120,000.00 |
| Defamation, false light, Ohio Deceptive Trade Practices Act, tortious interference | $10,000.00 |
| Punitive Damages | $50,000.00 |
| Attorney's Fees and Costs | <u>$19,685.62</u> |
| **TOTAL:** | **<u>$208,074.12</u>** |

Although Defendant, at her own request, is registered for electronic filing (*see* ECF No. 65), the Clerk is nevertheless **DIRECTED** to also send via regular and certified mail a copy of this Report and Recommendation to Defendant Paula Zaro at the address listed on the docket, namely, 45 Wapping Road, Kingston, MA 02364, and to certify on the record that it has done so.

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date: May 7, 2019                         /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE