# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

DAVE MUSTO, *et al.*,

    Plaintiffs,

v.

PAULA ZARO,

    Defendant.

Case No. 2:17-cv-506

Judge Graham

Chief Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Paula Zaro's May 21, 2019 objections to the May 7, 2019 Report and Recommendation of Chief Magistrate Judge Deavers (ECF No. 82), to whom this case was referred pursuant to 28 U.S.C. § 636(b), recommending that default judgment be entered against her in an amount determined following a damages hearing held pursuant to Fed. R. Civ. P. 55(b)(2)(B). (ECF No. 80.) For the reasons set forth below, the Court **OVERRULES** Defendant's objections (ECF No. 82), and **ADOPTS** in part and **MODIFIES** in part the Report and Recommendation issued by Chief Magistrate Judge Deavers (ECF No. 80), as amended by the *Nunc Pro Tunc* Report and Recommendation (ECF No. 81).

**I.    Background**

This case has a lengthy procedural history involving Defendant's champion purebred Cane Corso, referred to throughout this litigation as either "Pepe" or "Pepone,"[1] and the day he went missing at a Louisville, Kentucky dog show. Plaintiffs entered Pepe in the Louisville show per the parties' agreement for the Plaintiffs to exclusively handle and campaign Pepe in exchange for breeding rights. (ECF No. 9 at 171.) During the show, Plaintiffs briefly left Pepe in his crate to

---

[1] Pepe or Pepone's full name is *Piece of the Puzzle Sangue Magnifica*. (Compl. Ex. A, ECF No. 2-1.)

1

await his next turn. (*Id.* at 172.) Unbeknownst to the Plaintiffs, their actions were being closely monitored by Defendant. (*Id.*) When Mr. Musto returned for Pepe, he was gone. (*Id.*; Compl. ¶ 12, ECF No. 2 at 52.)

Police soon radioed that the driver of a blue minivan had broken through a barricaded back exit. (ECF No. 9-2 at 207.) The blue minivan belonged to Pepe's owner, Defendant Paula Zaro. Defendant later texted the Plaintiffs stating, "I'm just sending you this as a courtesy. I have my dog Pepe." (Ex. K, ECF No. 9-13.) Defendant refused to return Pepe or otherwise perform her obligations under the parties' agreement. (Compl. ¶ 12.)

Defendant's actions and her subsequent statements concerning Pepe's alleged "poor condition" prompted Plaintiffs' claims for: 1) breach of contract, 2) unjust enrichment/quantum meruit/quantum valebant, 3) specific performance, 4) intentional infliction of emotional distress, 5) fraudulent inducement, 6) promissory estoppel, 7) injunctive relief, 8) declaratory judgment, 9) defamation, 10) violation of the Ohio Deceptive Trade Practices Act, 11) false light, 12) tortious interference with business relationships, and the resulting compensatory and punitive damages and attorney's fees. (Compl.)

After Defendant, proceeding without the assistance of counsel since August 28, 2018, failed to file an answer, Plaintiffs filed for an entry of default (ECF No. 68), which the Clerk entered on January 30, 2019 (ECF No. 70). Plaintiffs then moved this Court for default judgment. (ECF No. 70.) On March 18, 2019, the Court adopted the Report and Recommendation issued by Chief Magistrate Judge Deavers recommending that Plaintiffs' Motion for Default Judgment Against Defendant Paula Zaro be granted (ECF No. 72) and granted Plaintiffs' motion. (ECF No. 73.) The Court once again referred this case to Chief Magistrate Judge Deavers, pursuant to 28 U.S.C. § 636(b), to conduct a damages hearing. (*Id.*)

In accordance with the Court's Order, a damages hearing was set for May 2, 2019. (ECF No. 75.) Chief Magistrate Judge Deavers conducted an evidentiary hearing on May 2, 2019 and briefly reconvened the hearing on May 3, 2019 for the limited purpose of admitting Plaintiffs' exhibits into evidence. At the May 2, 2019 hearing, the Plaintiffs requested compensatory damages for out of pocket expenses, loss of breeding rights, for their defamation/false light/Ohio Deceptive Trade Practices Act/tortious interference claims, punitive damages, and attorney's fees and costs. While Plaintiffs and their counsel appeared at the hearings, Defendant failed to appear or otherwise submit evidence.

On May 7, 2019, Chief Magistrate Judge Deavers issued an initial Report and Recommendation addressing Plaintiffs' damages claims and recommending that default judgment in the amount of $168,074.12 be entered against Defendant. (ECF No. 80.) Due to a scrivener's error in the damages amount, a *Nunc Pro Tunc* Report and Recommendation was issued on May 8, 2019 recommending that the Court enter default judgment against Defendant in the total amount of $208,074.12 based on the following calculations:

| | |
|---|---|
| Out of Pocket Costs | $8,388.50 |
| Breeding Rights Damages | $120,000.00 |
| Defamation, false light, Ohio Deceptive Trade Practices Act, tortious interference | $10,000.00 |
| Punitive Damages | $50,000.00 |
| Attorney's Fees and Costs | $19,685.62 |
| **TOTAL:** | **$208,074.12** |

(ECF No. 81.)

Defendant filed her objections to Chief Magistrate Judge Deavers's Report and Recommendation on May 21, 2018. (ECF No. 82.) Plaintiffs filed their response to Defendant's objections on June 4, 2019. (ECF No. 84.)

**II.     Standard of Review**

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). "Overly general objections do not satisfy the objection requirement." *Spencer v. Bouchard,* 449 F.3d 721, 725 (6th Cir. 2006). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). As required by 28 U.S.C. § 636(b)(1)(C), the Court will make a *de novo* review of those portions of the Report and Recommendation to which Defendant specifically objects.

**III.    Discussion**

**A. Default Judgment**

Defendant timely filed her objections. The first objection she raises concerns the entry of default judgment against her. (ECF No. 82 at 446.) Specifically, Defendant states, "I did not understand what was being asked of me at that point in time." (*Id.*)

During the parties' January 10, 2019 telephone status conference with Chief Magistrate Judge Deavers, memorialized in an Order (ECF No. 60), Defendant was unambiguously advised that her answer to the Complaint was due on January 24, 2019. She was further advised that she must become familiar with the Federal Rules of Civil Procedure and this Court's Local Rules. The Court's docket reflects that the Clerk mailed Defendant a copy of *A Guide for Pro Se Civil Litigants* on January 10, 2019.

On January 24, 2019, Defendant called the Clerk's office to request permission to file her answer electronically and confirmed receipt of *A Guide for Pro Se Civil Litigants*. On January 28, 2019, the Clerk's office received Defendant's Motion by Pro Se Litigant to Receive Service by Email through Electronic Case Filing System (ECF No. 61) and Defendant's Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 62), which the Court granted that same day (ECF No. 65). In the January 28, 2019 Order, the Court cautioned Defendant that "failure to update email address and monitor her email account (including her 'junk mail' or spam folder) for court filings may result in the entry of default, and ultimately, default judgment, against her." (*Id*. at 398 (collecting cases).)

Despite gaining access to electronic filing on January 28, 2019 and submitting several filings via regular mail (ECF Nos. 61, 62, 63, and 64), Defendant failed to file an answer or other responsive pleading. On January 29, 2019, Plaintiffs filed their Application to Enter Default by the Clerk Against Defendant Paula Zaro (ECF No. 68), which the Clerk entered on January 30, 2019. Following the Clerk's entry of default, Plaintiffs filed their Motion for Default Judgment Against Defendant Paula Zaro on January 30, 2019 (ECF No. 70). On February 4, 2019, the motion was referred to Chief Magistrate Judge Deavers. (ECF No. 71.) On February 26, 2019, Chief Magistrate Judge Deavers recommended that Plaintiffs' Motion for Default Judgment Against Defendant Paula Zaro (ECF No. 70) be granted, and that judgment be entered against Defendant in an amount to be set at a hearing following the entry of default judgment. (ECF No. 72.)

In her February 26, 2019 Report and Recommendation, Chief Magistrate Judge Deavers outlined the procedure for filing objections and warned that a failure to object to the Report and Recommendation within fourteen (14) days "will result in a waiver of the right to *de novo* review

5

by the District Judge and waiver of the right to appeal the judgment of the District Court." (*Id.* at 413.) Defendant did not object to the Report and Recommendation by the March 12, 2019 deadline. On March 18, 2019, the Court adopted the Report and Recommendation and granted Plaintiffs' motion for default judgment against Defendant. (ECF No. 73.)

Defendant's objection to the entry of default judgment is not well taken. The Court's docket overwhelmingly demonstrates that Defendant was well aware of her obligation to not only file an answer by the corresponding deadline, but to file her objections to the report and recommendation recommending the grant of default judgment against her within fourteen (14) days of its issuance. When Defendant failed to timely file any objections, the Court adopted the Report and Recommendation. (*Id.*) "[W]hen a party is notified that it must object to a magistrate judge's report and it does not do so, the party 'is deemed to waive review of the district court's adoption of the magistrate judge's recommendations.'" *Pfahler v. Nat'l Latex Prods. Co.,* 517 F.3d 816, 829 (6th Cir. 2007) (quoting *Spencer v. Bouchard,* 449 F.3d 721, 724 (6th Cir. 2006)). By failing to object to the Report and Recommendation, Defendant waived her right of review of the Court's adoption of the magistrate judge's recommendation to grant default judgment. Her objection to the entry of default judgment is therefore overruled.

Defendant's remaining objections concern the damages calculations and are addressed by category below:

**B. Out of Pocket Damages**

Plaintiffs asked the Court to award out of pocket expenses as compensation for damages suffered through Defendant's breach of contract and fraudulent inducement. (Pls.' Ex. 3.) Plaintiffs itemized those expenses as follows:

    1. February and March 2017 Entry Fees:                                           $667.00

2. Infodog Online Entry Fees: $103.50

3. Handling Monthly Fees (February and March 2017): $4,000.00

4. DN Magazine Ad: $675.00

5. Dogs in Review Ad: $610.00

6. Mark Advertising (Ad Design Fees): $576.00

7. Photo shoot: $250.00

8. Mileage to Shows (ATL, Tallahassee, L'ville)*: $1,507.00

   *(2,817 miles @ $0.535 per mile)

   TOTAL: $8,388.50

(*Id.*)

Defendant takes issue with items 1 (February and March 2017 Entry Fees), 4 (DN Magazine Ad), and 5 (Dogs in Review Ad) and objects to the corresponding amounts awarded for each. (ECF No. 82 at 446.) Concerning the first item, Defendant, "object[s] to the following monetary changes [l]ess entry fees for shows not attended and the dog in question 'Pepone' pulled by Plaintiff." (*Id.*) Similarly, Defendant disputes the amounts awarded for the expenses Plaintiffs incurred through their use of advertising space, as outlined in items 4 and 5. Specifically, Defendant argues, "Plaintiffs entered their own dogs in the ad spaces. If [Plaintiffs] want[] to claim this as an out of pocket expense[], they should have lost the ad space entirely, or, advertised the dog 'Pepone' to be able to claim it as an expense pertaining to said dog." (*Id.*) As an initial matter, Chief Magistrate Judge Deavers never had the opportunity to consider the alleged "no

show" or "advertisements for other dogs" issues when arriving at her recommended out of pocket damages amount.[2] Additionally, Defendant cites no evidence for either of her contentions.

Even assuming the Court were to consider these issues, they would not be well taken. At the damages hearing, Plaintiffs submitted invoices supporting their claimed out of pocket expenses. The invoice charges included in the damages calculation were for entry fees and advertisements pertaining to "Pepe" only. (Pls.' Exs. 3 and 4.) These invoices were also supported by the testimonial evidence of Plaintiff Mr. Musto. As Chief Magistrate Judge Deavers considered not only the testimony of Mr. Musto, but also the corroborating invoice evidence, the Court finds there is sufficient evidence to support an award of $8,388.50 in out of pocket damages for Plaintiffs' breach of contract and fraudulent inducement claims and overrules Defendants' objections.

**C. Damages from Loss of Breeding Rights**

Plaintiffs requested additional damages for their breach of contract and fraudulent inducement claims due to loss of breeding rights. As compensation for Plaintiffs' loss of breeding rights, Chief Magistrate Judge Deavers recommends the Court award $120,000. (ECF No. 80 at 426–27.) Defendant responds by advancing the new theory that Plaintiffs never intended to use Pepone's sperm and "had absolutely no use for his semen in their breeding program" and cannot be compensated for something they never intend to use. (ECF No. 82 at 447.)

Defendant's argument is not only newly raised, but it overlooks what the parties agreed to in their Owner-Sponsor Agreement (the "Agreement") and Plaintiffs' testimonial evidence. Under the Agreement, Plaintiffs, "maintain[ed] the right to have 5 (five) breeding units frozen from said

---

[2] Absent compelling reasons, parties are not permitted through the district court's *de novo* review to raise new arguments or issues that were not presented to the magistrate judge. *Murr v. United States,* 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing, *inter alia, United States v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998)).

dog to use at a later time with all associated collection and freezing fees paid by SPONSOR." (ECF No. 2-1 at 83.) At the damages hearing, Mr. Musto testified that he would have collected the semen, as provided for in the parties' Agreement, and likewise, was not seeking reimbursement for any collection or storage fees. Mr. Musto also described the importance of obtaining breeding rights and their impact on the Plaintiffs' breeding program and overall livelihood. Mr. Musto further explained that per the Agreement, he had four breeding rights of Pepe to any female he owned or co-owned. He then provided the following calculations based on his eight years of experience breeding Cane Corsos and using a conservatively estimated 6 puppies per litter:

1. 6 puppies per litter x $2,000 = $12,000 x 4 litters = $48,000.00
2. 2 males kept from 4 litters x $2,400 average stud fee x 10 breedings (5 each) = $24,000.00
3. 2 females from the 4 litters producing 6 puppies per litter (12 total puppies per litter) x $2,000 = $24,000 x 2 litters = $48,000.00

TOTAL DAMAGES: $120,000.00

(Pls.' Ex. 3.)

Mr. Musto further attested to the reasonableness of his calculations by highlighting the fact that some females can produce up to fourteen (14) puppies per litter and noting that Plaintiffs have previously purchased a single dog for $30,000. As Chief Magistrate Judge Deavers considered the uncontroverted testimony of Mr. Musto, a breeder with numerous years of experience, in arriving at her recommended $120,000 for Plaintiffs' loss of breeding rights, the Court finds there is sufficient evidence to support her recommended award and overrules Defendant's objections.

**D. Damages for Defamation/False Light/Ohio Deceptive Trade Practices Act/Tortious Interference**

Defendant further objects, because she believes that the entirety of the Plaintiffs' defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference claims are hearsay "and based upon allegations that cannot be validated." (ECF No. 82 at 447.) Here too Defendant's belated argument is not well taken, because her liability for these offenses has already been determined. Through the entry of default judgment against Defendant, Plaintiffs' allegations are no longer in dispute. *United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007) ("[U]pon the entry of a default judgment, [the defendant's] liability was deemed to be established as a matter of law and the factual allegations of the complaint were no longer open to dispute.")

Notwithstanding the foregoing, the Court finds there is credible evidence to support the magistrate judge's recommended damages award relating to Plaintiffs' defamation, false light, Ohio Deceptive Trade Practices Act, and tortious interference claims. Chief Magistrate Judge Deavers considered Plaintiffs' testimonial evidence concerning their previously impeccable reputation in the dog show community. After Defendant took Pepe from the Louisville show, Mr. Musto's affidavit reflects that Defendant made several disparaging remarks about the dog's mistreatment while under the care of the Plaintiffs. (ECF No. 9-1 at ¶¶ 35–36.) At the damages hearing, Mr. Musto testified that Plaintiffs are still questioned by other members of the dog show community about what happened in Louisville. Mr. Musto further stated that people inaccurately conclude that Defendant would not have taken Pepe away if he had not been mistreated by Plaintiffs.

At the damages hearing, Mr. Musto refuted Defendant's assertions by explaining that Pepe could not have attained his championship status if he had been in poor condition, nor could he have won during the first few days of the Louisville show. Mr. Musto not only showed a winning

photo of Pepe that the Defendant later used in her own advertisement, but also provided a letter from a veterinarian with over thirty years of experience who attended the Louisville show and observed Pepe as being in excellent condition at the time of the incident. (Pls.' Exs. 5 and 6.) Mr. Musto further testified that Defendant would not have continued showing Pepe following the Louisville show if he had been in poor condition. Nevertheless, Mr. Musto indicated that Defendant's statements concerning Pepe's alleged mistreatment have damaged Plaintiffs' professional reputations in the dog show community.

As Chief Magistrate Judge Deavers considered not only the uncontroverted testimonial evidence of Mr. Musto and the exhibits Plaintiffs provided, but also the relevant case law concerning customary harms inflicted by defamatory statements,[3] in arriving at her recommended damages total of $10,000.00, the Court finds her recommendation is supported by substantial evidence. Accordingly, Defendant's objections are overruled.

### E. Punitive Damages

Ohio Revised Code § 2315.21 governs the award of punitive damages for tortious conduct. "Punitive damages are awarded to punish the [tortfeasor] and deter tortious conduct by others." *Digital & Analog Design Corp. v. North Supply Co,* 63 Ohio St.3d 657, 660, 590 N.E.2d 737 (1992). An award of punitive damages requires proof of "actual malice," which is defined as either "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), at syllabus. Actual malice may be inferred from conduct and surrounding circumstances.

---

[3] *See, e.g., Sayavich v. Creatore*, No. 07–MA 217, 2009 WL 3165555, at *5 (Ohio Ct. App. Sept. 29, 2009) ("'[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'") (quoting *Gilbert v. WNIR 100 FM*, 142 Ohio App. 3d 725, 745 (Ohio Ct. App. 2001)).

11

*Winner Trucking, Inc. v. Victor L. Dowers, & Assoc.*, 2007-Ohio-3447, ¶ 28 (Ct. App.) (citing *Leichtamer v. Am. Motors Corp.*, 67 Ohio St. 2d 456, 471, 424 N.E.2d 568 (1981)).

The plaintiff bears the burden of proving entitlement to an award of punitive damages by clear and convincing evidence. Ohio Rev. Code § 2315.21(D)(4). Once the plaintiff sustains his or her burden, the decision to impose damages and in what amount is at the court's discretion. *Whetstone v. Binner*, 146 Ohio St. 3d 395, 398, 57 N.E.3d 1111, 1115 (2016).

Chief Magistrate Judge Deavers found that the record contained clear and convincing evidence to support the Plaintiffs' entitlement to punitive damages. (ECF No. 81 at 442.) Defendant arrived at the Louisville show unannounced, entered a barricaded area, and removed Pepe from his crate without notifying anyone of her actions. Only later, after it was announced to the entire Louisville show that Pepe was missing, and a panicked search ensued, did she inform Plaintiffs that she had taken him. As summarized earlier, Defendant's conduct and the surrounding circumstances led others in the dog show community, including potential clients, to conclude that Defendant took her dog away because Plaintiffs did not properly care for him. (*Id.*)

This assessment stands in stark contrast to Plaintiffs passing numerous American Kennel Club and other inspections, Pepe's successful performance record, and the opinion of an experienced veterinarian who witnessed Pepe's condition at the Louisville show. (*Id.* at 443.) The record further demonstrates that despite Pepe's alleged "poor condition," Defendant continued showing him at other events. Chief Magistrate Judge Deavers concluded that Defendant consciously disregarded the truth to the detriment of Plaintiffs' professional reputations and recommended that the Court exercise its discretion and award punitive damages in the amount of $50,000, *i.e.,* five times the amount of the recommended damages pertaining to Plaintiffs' defamation claim. (*Id.*)

In her objections, Defendant claims she never intended to harm the Plaintiffs' "financial, personal, or professional reputation" and merely intended to get her dog back after receiving unsatisfactory responses concerning Pepe's condition. (*Id.*) Defendant also questions the evidence relied upon to determine that she made defamatory statements to third parties. (*Id.* at 448.)

Once again, Defendant raises arguments that were not before the magistrate judge when she made her recommendation. Defendant could have presented evidence of lack of intent but forfeited that right by failing to appear. Furthermore, by failing to answer the Complaint, Defendant is deemed to have admitted making the alleged defamatory statements, that they were made with malice, and that they harmed Plaintiffs' reputations and business, entitling them to an award of punitive damages.[4] *See Doepker v. Willo Sec., Inc.,* 2008-Ohio-2008 (Ct. App.) (explaining the consequences of failing to answer when awarding punitive damages)).

Even if Defendant's arguments were properly raised, the Court nonetheless finds that Chief Magistrate Judge Deavers correctly determined that Plaintiffs have met their burden to provide clear and convincing evidence to support their entitlement to punitive damages. Plaintiffs' evidence supports the conclusion that Defendant's conduct and the surrounding circumstances demonstrate her ill will and conscious disregard for the truth to the detriment of Plaintiffs' business and their professional reputations. Defendant's objections are therefore overruled, and the Court adopts the magistrate judge's decision to award punitive damages but modifies the amount.

Ohio Revised Code § 2315.21(D)(2)(a) limits a court's discretion in awarding punitive damages by stating "the court shall not enter judgment for punitive or exemplary damages in

---

[4] "Defendant also made false and defamatory statements about the Plaintiffs and/or their businesses, including, but not limited to, Safari Handling and Training LLC ("Safari"), to multiple persons in the dog show community. These false and defamatory statements have been made through, at a minimum, emails, verbal conversations and/or through social media. These false and defamatory statements include claiming the Plaintiffs mistreated Pepone while he was in their possession. These defamatory statements are entirely false and malicious, and have caused the Plaintiffs and their businesses reputational and emotional injury entitling them to compensatory and punitive damages." (Compl. ¶ 16, ECF No. 2 at 54.)

13

excess of two times the amount of the compensatory damages awarded to the plaintiff." In this case, the recommended damages award is five times the recommended amount of compensatory damages relating to Plaintiffs' defamation claim. When an award for punitive damages is more than twice the amount of compensatory damages, reduction of that amount to one within the statutory limit is appropriate. *Sivit v. Vill. Green of Beachwood, L.P.*, 143 Ohio St. 3d 168, 170, 35 N.E.3d 508, 510 (2015).

The Court therefore determines that a punitive damages award of $20,000, which is twice the recommended compensatory damages amount for Plaintiffs' defamation claim is sufficient. An award of double the amount of compensatory damages for tortious conduct is adequate to both punish a defendant and deter certain conduct. *See Winner Trucking, Inc. v. Victor L. Dowers, & Assoc.,* 2007-Ohio-3447, ¶ 40. The Court finds that double the amount in this case will achieve those twin aims.

## IV. Conclusion

For the reasons stated above, the Court **OVERRULES** Defendant's objections (ECF No. 82) and **ADOPTS** in part and **MODIFIES** in part the Report and Recommendation issued by Chief Magistrate Judge Deavers (ECF No. 80), as amended by the *Nunc Pro Tunc* Report and Recommendation (ECF No. 81) by reducing the punitive damages award to $20,000 and the total amount of damages to be assessed against Defendant. Default judgment in the total amount of $178,074.12 is hereby entered against Defendant Paula Zaro. The Clerk is directed to enter final judgment in this case.

At the conclusion of her objections,[5] Defendant also makes a motion "to vacate the entirety of the damages hearing." (ECF No. 82 at 448.) Defendant's motion is **DENIED**, as she states no grounds for relief.

**IT IS SO ORDERED**.

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 21, 2019

---

[5] In her concluding paragraph, Defendant also raises the Statute of Frauds defense. (ECF No. 82 at 448.) Any suggestion by Defendant that the parties' agreement is unenforceable has been waived. The Statute of Frauds is inapplicable when a defendant is in default because it "is an affirmative defense which is waived if not raised as a defense in the pleadings." *Sanshuck v. Guzman*, No. 1:08-CV-2318, 2010 U.S. Dist. LEXIS 72189, at *4 n.2 (N.D. Ohio July 19, 2010) (quoting *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981)); Fed. R. Civ. P. 8(c). Though the filings of a pro se litigant are construed liberally, Defendant is not be relieved of the responsibility to comply with basic rules of court. *McNeil v. United States,* 508 U.S. 106, 113 (1993) (finding that a pro se party will not be relieved of the responsibility to comply with basic rules of court such as Rule 8).